IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FARMERS INSURANCE           *
COMPANY, INC.,              *
                           *
            Plaintiff,      *
vs.                         *      No. 4:16-cv-00258-SWW
                           *
                           *
ROBERT ALLEN FREDERICKSON and *
KELLI JO BROCK,             *
                           *
            Defendants.     *

<u>OPINION AND ORDER</u>

Farmers Insurance Company, Inc., brings this declaratory judgment action against

Robert Allen Frederickson and Kelli Jo Brock seeking a declaration that a homeowner's

insurance policy issued by Farmers to Brock affords no liability coverage for a judgment

Frederickson obtained against Brock.  The matter is before the Court on motion of

Farmers for summary judgment [doc.#10].  Frederickson and Brock have each responded

in opposition to Farmers's motion and Farmers has replied to Frederickson's response.

For the reasons that follow, the Court grants Farmers's motion for summary judgment.

I.

In 2009, Farmers issued Brock a homeowner's insurance policy–No. 94064-50-49

(the "Policy")–with effective dates of coverage from July 6, 2009 to July 6, 2010.  The

Policy provides in relevant part as follows:

**SECTION II- LIABILITY COVERAGE**

**Coverage E (Personal Liability)**

We will pay those damages which an **insured** becomes legally obligated to pay because of:

1. **bodily injury** resulting from an **occurrence**...

The Policy defines "bodily injury" in relevant part as follows:

**Bodily injury** - under Section II - Liability means physical harm to the body, including physical sickness or disease, to a person other than an **insured.**  This includes reasonable required care, loss of services and death that results.

**Bodily injury** does not include:

a. psychological or mental injury or effect, including by way of example but not limited to fear, depression, humiliation, anxiety, anguish, shock or distress, unless it arises from actual physical harm to the body of a person;

. . . .

e. any symptom, injury, condition, effect, illness or disease related to subsections a. through d. above, or resulting from a **noxious substance**.  A symptom, injury, condition, effect, illness or disease includes by way of example but is not limited to fatigue, insomnia, stomachaches, headaches or ulcers.

The Policy defines "occurrence" in relevant part as follows:

**Occurrence** - under Section II - Liability means an accident, including exposure to conditions, which occurs during the policy period, and which results in **bodily injury, property damage or personal injury** during the policy period...

Concerning intentional acts of the insured, the Policy provides in relevant part as follows:

## SECTION II- LIABILITY EXCLUSIONS

Coverage E (Personal Liability), Coverage F (Medical Payments to Others)

and **personal injury** coverage, if covered under this policy, do not apply to:

. . .

12. **Intentional Acts**.

We do not cover **bodily injury**, **property damage** or **personal injury** which is caused by, arises out of or is the result of an intentional act by or at the direction of any **insured**. By way of example this includes but is not limited to any intentional act or intentional failure to act by any **insured**, whether a criminal act or otherwise, where resulting injury or damage would be objectively expected to a high degree of likelihood, even if not subjectively intended or expected. This exclusion applies even if:

a. any **insured** mistakenly believes he or she has the right to engage in certain conduct;

b. the injury or damage is sustained by persons or property not intended or expected by any **insured**;

c. the injury or damage is different or greater or of a different quality than that intended or expected;

d. any **insured** did not understand that injury or damage may result; or

e. any **insured** knew the intentional act or failure to act was a violation of any penal law, whether or not an **insured** is actually charged with or convicted of a crime . . . .

On July 11, 2009, five days after the Policy went into effect, Brock was shot in the leg with a handgun inside her home in Conway, Arkansas.[1]  She reported to the police that one of her ex-husband's friends, Robert Frederickson, broke into her home and engaged her in a physical altercation resulting in her being shot.

Based on Brock's allegations, Frederickson was arrested on July 11, 2009, and

---

[1] The underlying facts as herein set forth are taken in part from an Opinion and Order issued by United States District Judge J. Leon Holmes in a related criminal case, *United States v. Kelli Jo Craig, a/k/a Kelli Jo Brock*, No. 4:12-cr-00097-JLH (E.D. Ark. Feb. 26, 2014).

charged in the Circuit Court of Faulkner County, Arkansas with crimes related to the shooting.  Frederickson was detained pending trial.

In preparation for Frederickson's trial, the prosecutor asked Brock to prepare a narrative of events that occurred during and around the time of the shooting.  Brock authored such a narrative for the prosecutor, which described events that she said took place from May 2, 2009, through the alleged home invasion on July 11, 2009.

Frederickson was tried and acquitted in March 2010.  He had been detained some eight months while awaiting trial.

On July 1, 2010, a threatening letter addressed to Brock was mailed from Pine Bluff, Arkansas, and delivered by the United States Postal Service to Brock on July 3, 2010.  The letter referenced the shooting that had taken place in July 2009.  Brock provided the letter to the Conway police, who submitted it to the Postal Service for investigation.

As part of the investigation into the letter, Brock was interviewed by United States Postal Inspector David Barrett and two FBI Special Agents.  During those interviews, Brock was asked to provide a written statement regarding what had happened in the July 2009 shooting.  In response to this request, Brock provided Barrett the narrative that she had given to the Faulkner County prosecutor in preparation for Frederickson's trial.

Believing that Brock shot herself and concocted the story of Frederickson's involvement to frame him, the United States, on May 10, 2012, indicted Brock on two counts.  Count 1 charged that on or about September 8, 2010, she made a false statement

-4-

to federal agents in violation of 18 U.S.C. § 1001.  Count 2 charged that on or about

August 10, 2010, she falsified a document–the narrative that Brock had given to the

Faulkner County prosecutor in preparation for Frederickson's trial–with the intent to

impede, obstruct, and influence the investigation of a matter that she knew was within the

jurisdiction of the United States Postal Service, in violation of 18 U.S.C. § 1519.

The matter went to trial in November 2013.  The jury acquitted Brock on Count 1

but convicted her on Count 2.  Brock subsequently moved for a judgment of acquittal,

which Judge Holmes granted in the Opinion and Order referenced earlier, *United States v.*

*Kelli Jo Craig, a/k/a/ Kelli Jo Brock*, No. 4:12-cr-00097-JLH (E.D. Ark. Feb. 26, 2014).

In his order granting Brock's motion for judgment of acquittal, Judge Holmes concluded

as follows:

> [Brock] may have falsified the narrative that she delivered to
> the state prosecutor in preparation for the Frederickson
> trial—this opinion assumes that she did.  At the time she
> falsified that document, however, she did so with the intent to
> influence a state prosecution, not to impede, obstruct, or
> influence the investigation of a matter within the jurisdiction
> of an agency or department of the United States.  When
> [Brock] falsified that document, no federal investigation was
> ongoing, nor was one foreseeable.  Presumably, [Brock]
> intended to influence the federal investigation of the
> threatening letter when she delivered the false narrative to
> Barrett, but she did not falsify the document at that time—the
> document had been falsified months earlier.  Taking all facts
> in the light most favorable to the verdict, a jury could not
> reasonably find that [Brock] falsified a document with the
> intent to impede, obstruct, or influence the investigation of a
> matter that was within the jurisdiction of a department or
> agency of the United States.

*Id.*[2]

Meanwhile, Frederickson filed a complaint against Brock in the Faulkner County Circuit Court seeking damages for malicious prosecution, abuse of process, and filing a false police report concerning Brock's claim to the police that he broke into her home and engaged her in a physical altercation resulting in her being shot.  Farmers provided Brock a defense in that case–*Frederickson v. Brock*, No. 23CV-11-88–under a full reservation of rights.

In February 2016, Frederickson's complaint against Brock was resolved by arbitration, with the arbitrator awarding Frederickson $500,000 in compensatory damages.  In his decision, the arbitrator (misspelling Frederickson's last name as "Fredrickson") stated he placed "much significance" on Judge Holmes's Opinion and Order of February 26, 2014, in which Judge Holmes stated he assumed that Brock falsified the narrative that she delivered to the state prosecutor in preparation for the Frederickson trial.  The arbitrator made the following findings:

> 1. Do you find, based on the preponderance of the evidence, that Defendant Kelli Brock engaged in malicious prosecution which proximately caused harm to Robert Allen Fredrickson?
>
>    No.
>
> As I reviewed the elements of malicious prosecution in AMI 413, it was a straightforward process for me to see that the elements in the first, second,

---

[2] The United States appealed Judge Holmes's order granting Brock's motion for judgment of acquittal to the United States Court of Appeals for the Eighth Circuit.  On May 22, 2014, the Eighth Circuit, on motion of the United States, dismissed the appeal.

third, fourth and sixth paragraphs were proved by the evidence.  The one element that I did not clearly see was the fifth element regarding an improper or sinister motive.  While I could certainly infer that from the evidence, I do not believe that the Plaintiff provided me with that proof by preponderance of the evidence or the greater weight of the evidence.

2. Do you find, based on a preponderance of the evidence, that Defendant Kelli Brock engaged in abuse of process which proximately caused harm to Robert Allen Fredrickson?

Yes.

3. Do you find, based on a preponderance of the evidence, that Defendant Kelli Brock filed a false police report which proximately caused harm to Robert Allen Fredrickson?

Yes.

Again, I give great deference to the jury's decision in th[e] federal court case and Judge Holmes' statement that "[Brock] may have falsified the narrative that she delivered to the state prosecutor in preparation for the Fredrickson trial - this opinion assumes that she did."  That phraseology is consistent with the evidence in this case, the jury finding in federal court and the lack of information or evidence produced by the defendant that would mitigate or explain a finding to the contrary.

Finally, I have been given a damage verdict form to state the amount of damages which will compensate Robert Allen Fredrickson.  I've been provided with information regarding attorneys' fees and expert witness costs in defending the trial in Faulkner County Circuit Court as well as information regarding lost income of Mr. Fredrickson's business.  However, most important to me is his incarceration for eight months as well as the stigma of being charged with a felony and having to face the possible incarceration in the Arkansas Department of Correction for decades.  Based on the totality of circumstances, I believe it is appropriate to award $500,000.00 in compensatory damages in this case.

On February 19, 2016, the Faulkner County Circuit Court confirmed the

arbitrator's award and entered judgment in favor of Frederickson and against Brock in the

amount of $500,000.[3]  Thereafter, Farmers filed this declaratory judgment action.

## II.

Farmers moves for summary judgment on grounds that Frederickson did not sustain "bodily injury" resulting from an "occurrence" as those terms are defined in the Policy.  Farmers argues the Policy thus affords no liability coverage for the judgment Frederickson obtained against Brock.[4]

## A.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," or show "that the materials cited do not establish the absence or presence of a genuine dispute," or "that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(A)-(B).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).  The inferences to be drawn from

---

[3] The judgment incorporates the arbitrator's findings.

[4] Farmers also argues that Frederickson did not sustain "property damage," which under the Policy means "actual physical injury to or destruction of tangible property."  Frederickson and Brock do not dispute that property damage is not at issue in this action.  But even if they do, they have waived Farmers's argument, having failed to address or brief it in their responses to Farmers's motion for summary judgment.  See *Satcher v. University of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes a waiver of that argument").  In any case, it is clear that Frederickson did not sustain "property damage" as that term is defined in the Policy.

-8-

the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986) (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

## B.

### 1.

Because this is a diversity case, the Court looks to Arkansas state law when interpreting the provisions of an insurance policy. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001) (citation omitted). If the language of an insurance policy is unambiguous, the Court will give effect to the plain language of the policy without resorting to the rules of construction. *Admiral Ins. Co. v. Bradley*, No. 4:14-cv-00296-JM, 2015 WL 3466224, at *2 (E.D. Ark. June 1, 2015) (citation omitted). If the language is ambiguous, the Court will construe the policy liberally in favor of the insured and strictly against the insurer. *Id.* "Language is ambiguous if there is doubt or uncertainty as

to its meaning and it is fairly susceptible to more than one reasonable interpretation."
*Elam v. First Unum Life Ins. Co.*, 346 Ark. 291, 297, 57 S.W.3d 165, 169 (2001)
(citations omitted).  Whether language of the policy is ambiguous is a question of law to
be decided by the court.  *Castaneda v. Progressive Classic Ins. Co.*, 357 Ark. 345, 351,
166 S.W.3d 556, 561 (2004) (citation omitted).  An intent to exclude coverage in an
insurance policy must be expressed in clear and unambiguous language, and the burden is
upon the insurance company to present facts that come within the stated exclusion.
*Pinnacle Resources, Inc. v. Chartis Specialty Ins. Co.*, No. 5:13-cv-00249-SWW, 2014
WL 3809104, at *2 (E.D. Ark. 2014) (citation omitted).  Courts are not required by the
rules of contractual construction to stretch their imaginations to create coverage where
none exists.  *Id*.

2.

The Court finds that the Policy is unambiguous as it pertains to this action and
affords no liability coverage for the judgment Frederickson obtained against Brock.
Brock was found to have committed abuse of process and filing a false police report.
These actions did not cause Frederickson to sustain "bodily injury," which under the
Policy means "physical harm to the body" (and does not include "psychological or mental
injury or effect...").  Rather, the arbitrator's decision and the court's subsequent judgment
indicate that the compensatory damages awarded to Frederickson were to compensate him
for (1) attorney's fees, expert witness costs, and lost income from his business, and (2) for
eight months incarceration and the stigma of being charged with a felony and having to

face possible incarceration in the Arkansas Department of Correction for decades.  None of the matters for which compensatory damages were awarded constitutes "bodily injury" as that term is defined in the Policy.

Frederickson, however, argues that he suffered post-traumatic stress disorder (PTSD) from Brock's actions and that "PTSD most certainly is a physical sickness or disease."  He argues that "it takes no real imagination to understand that being arrested, hauled off to jail, placed in a prison cell and kept in that prison cell for an extended period causes physical harm to the body."[5]

It is true that some courts have held that "emotional distress manifesting in physical symptoms may, under some policies serve as 'bodily injury.'"  *State Farm and Fire and Casualty v. El-Moslimany*, — F.3d —, 2016 WL 1531966, at *8 (W.D. Wash. April 15, 2016) (citing *Lien Trinh v. Allstate Ins. Co.*, 109 Wash.App. 927, 936, 37 P.3d 1259 (2002) (where policy defined "'bodily injury' to mean 'sickness' or 'disease,'" bodily injury included "emotional injuries that are accompanied by physical manifestations."; finding physically-manifested PTSD clearly and unambiguously fell within the "broad terms" of the policy's definition of bodily injury)).  Other courts, however, hold that "bodily injury," defined similarly as here, does not include emotional or mental injuries manifesting in physical symptoms.  See, *e.g., Heacker v. Safeco Ins.*

---

[5] In an affidavit, Frederickson states that from the time of his arrest until his release in March 2010, he "received numerous physical injuries to my body along with damages to my reputation, my business and my emotional well being."  But Frederickson does not specify any physical injuries he received or how he received them.

*Co. of America*, 676 F.3d 724, 728 (8th Cir. 2012) (victim's alleged PTSD and alcoholism, suffered as result of insured's negligent infliction of emotional distress and negligent failure to supervise children, did not constitute "bodily injury," defined by homeowner's policy as "bodily harm, sickness or disease," since victim's physical manifestations from his PTSD and alcoholism were directly caused by purely emotional injury, not bodily harm, bodily sickness, or bodily disease); *Grange Ins. Co. v. Sawmiller*, 11 N.E.3d 1199, 1204 (Ohio Ct. App. 3rd Dist. April 7, 2014) (where policy defined "bodily injury" as "bodily harm, sickness or disease ...," court held that "bodily injury" does not include PTSD-related injuries).  The Court agrees with those courts holding that "bodily injury," defined similarly as here, does not include emotional or mental injuries manifesting in physical symptoms.

Moreover, neither Brock's abuse of process nor her filing a false police report can be considered an "occurrence," which under the Policy means an "accident."  In construing a policy that defined an "occurrence" as an "accident," the Arkansas Supreme Court defined an "accident" as "'an event that takes place without one's foresight or expectation–an event that proceeds from an unknown cause, or is an unusual effect of a known cause, and therefore not expected.'"  *U.S. Fidelity & Guar. Co. v. Continental Cas. Co.*, 353 Ark. 834, 845, 120 S.W.3d 556, 563 (2003) (quoting *Continental Ins. Co. v. Hodges*, 259 Ark. 541, 534 S.W.2d 764 (1976)).  Brock's abuse of process and filing a false police report were not accidents but were intentional acts.  See, *e.g., Carmical v. McAfee*, 68 Ark.App. 313, 7 S.W.3d 350 (1999) (noting that the elements of abuse of

process are: 1) a legal procedure set in motion in proper form, even with probable cause and ultimate success; 2) the perversion of the legal procedure to accomplish an alternative purpose for which it was not designed; and 3) a willful act perpetrated in the use of process which is not proper in the regular conduct of the legal proceeding); *Boveia v. State*, 94 Ark.App. 252, 228 S.W.3d 550 (2006) (noting that under Ark. Code Ann. § 5-54-122, a person commits the offense of filing a false report if he or she filed a report with any law enforcement agency or prosecuting attorney's office of any alleged criminal wrongdoing on the part of another knowing that such report is false).  The Policy does not cover injury or damage "which is caused by, arises out of or is the result of an intentional act by or at the direction of any insured."

Nor, as argued by Brock, does the Policy's "personal injury" provision provide coverage. The Policy defines "personal injury" as follows:

> 23. **Personal injury** – under Section II – Liability, means an act or activity of an **insured** which takes place during the policy period which results in injury to another, other than an **insured**, from one of more of the following offenses:
>
> a. false arrest, wrongful imprisonment or detention;
> b. libel, slander or defamation of character; or
> c. malicious prosecution.

Brock argues that if coverage is extended to malicious prosecution, false arrest, libel, and defamation, then the conduct consisting of abuse of process is included within these undefined acts.

The Policy does provide that "[i]f the Declarations or renewal notice indicates

**personal injury** coverage applies, we will pay those damages which an **insured** becomes legally obligated to pay because of **personal injury** resulting from an **occurrence** to which this coverage applies."  Here, however, the Policy's Declaration's Page makes clear that "personal injury" is not covered under the Policy.  Thus, Brock's reliance on the "personal injury" provision of the Policy is misplaced.[6]

III.

For the foregoing reasons, the Court grants Farmers's motion for summary judgment [doc.#10].  The Court will enter judgment accordingly.

IT IS SO ORDERED this 20th day of October 2016.

<u>/s/Susan Webber Wright</u>
UNITED STATES DISTRICT JUDGE

---

[6] Frederickson likewise argued in an earlier motion to compel that the Policy's "personal injury" provision provides coverage.  By order entered September 29, 2016, the Court denied Frederickson's motion to compel, finding, among other things, that "personal injury" is not covered under the Policy.

-14-